No. 146.—ELIZA POPE, plaintiff in error, *vs.* ROBERT TOOMBS, defendant in error. ROBERT TOOMBS, plaintiff in error, *vs.* ELIZA POPE, defendant in error.

[1.] " A motion was made for a new trial, and to the motion was appended what the motion referred to as a brief of the evidence. Two of the grounds of the motion related to evidence. The Court took up the motion, and after hearing it in part, adjourned it to a specified time in vacation ; and at that time, adjourned it in such a manner that it was not again heard till the next regular term of the Court. At that term, the defendant in the motion moved to dismiss the motion, on the ground that the brief of the evidence had not been approved by the Court or agreed to by the parties. The Court over-ruled that motion :" *Held*, that the Court did right.

[2.] Whether a judgment is right or not, depends on whether it is what the facts warrant—the facts taken at the valuation put on them by the law—not at the valuation put on them by the Judge rendering the judgment.

[3.] A general expression, used by a witness in place of a repetition of particulars, or as an introduction to a statement of particulars, was admitted: *Held*, that the admission of the expression to the Jury, was not a good ground for a new trial.

[4.] A defendant in error is entitled to insist, in the reviewing Court, on all the grounds which he insisted upon in the lower Court, although that Court, in deciding the points brought before the reviewing Court, put its judgment on some of those grounds only.

Trover, in Wilkes Superior Court. Decision by Judge JAMES THOMAS, September Term, 1856.

Eliza Pope brought an action of trover against Robert Toombs, for several negroes. The defendant claimed as administrator of Henry J. Pope.

Upon the trial, a verdict was rendered for the plaintiff at March Term, 1856, and a motion was then made for a new trial.

At September Term, 1856, Counsel for plaintiff moved to dismiss the motion, because no brief of all the evidence in the cause had ever been approved by the Court or agreed upon by Counsel, and such approval and agreement entered on the minutes. The motion was in the following words:

ELIZA POPE
  *vs.* } *Suit, &c.  Verdict for plaintiff.*
ROBERT TOOMBS.

And now, at this term, comes the defendant, by his Attornies, Irvin and Barnett, and prays the Court for a new trial in said cause, for the grounds following, to-wit:

1st. Because the Court erred in admitting as evidence before the Jury, the words following in the testimony of Eliza Pope, viz: "The trade was not completed"—such words being the statement of a legal conclusion, and not of a fact—the facts, themselves, being elsewhere stated.

2d. Because the verdict was contrary to evidence.

3d. Because it was contrary to law.

4th. Because it was contrary to the charge of the Court.

And this defendant prays that this may operate as a *supersedeas* in said cause, and that the brief of the testimony hereto appended may be approved by the Court, and that the plaintiff may show cause, at once, why a new trial should not be granted—plaintiff, in open Court, waiving notice and farther service of grounds of application for new trial.

                    IRVIN & BARNETT, Def'ts Att'ys.

### COPY OF EVIDENCE.

SAMUEL BALDWIN's interrogatories proved property in plaintiff prior to its going into possession of Henry J. Pope, defendant's intestate, and proved value of property.

I agree to the above as Baldwin's testimony.

       Signed,                    THOS. R. R. COBB.

### COPY OF THE ANSWERS OF MRS. ELIZA POPE, PLAINTIFF.

ELIZA POPE
  *vs.* } *Trover on appeal, in Wilkes Sup. Court.*
ROBERT TOOMBS.

The answers of Mrs. Eliza Pope, the plaintiff, to interrogatories filed for her in the above stated case:

To interrogatory 1st. I was acquainted with Henry J. Pope; 2d. The negroes sued for in the above stated case did belong to me; 3d. They passed out of my possession into that of Henry J. Pope, under the following state of facts : Mr. Pope was buying negroes to carry on rail road work ; he applied to me on several occasions during the fall of the year 1852, to purchase my negroes. We finally agreed upon the prices for the negroes sued for, and also for a negro woman named Fanny. Another negro, Orry, it was agreed should be sent with the other negroes, and according as her health proved good or otherwise, we were to agree on a price for her when the trade was finally closed. This was in October or November, 1852. The negro man and boy were carried off by Mr. Pope—the other negroes being hired out could not be delivered till the end of the year. (Hence, the trade was left open and unfinished.) At the end of the year I sent the negroes down to him, Orry with them.

In January, 1853, I went down myself in order to have the trade between us closed. At that time, I had changed my mind as to Fanny, and Mr. Pope, through his wife, signified his willingness to me to take her out of the contract. I remained in Stewart County near two months, (Mr. Pope being absent,) awaiting his return in order to conclude this trade. He did not return before I left. I had no doubt as to his integrity, and felt easy that the contract would be completed in its spirit when we met again; and hence, I left the negroes there—Orry with them. The trade was an entire contract; that is, I mean the negroes were not sold separately. The object I had being to place family negroes together, in the hands of a friend; and hence, the prices I set upon them were lower than the market prices of similar negroes. (I never considered the trade as completed, although had Mr. Pope lived and we had met again, I did not doubt it would have been completed.) Orry was sold just as much as any of the negroes. The only difference was, no price was agreed on as to her. In fact, being near relations and

friends, we left the whole matter open, subject to final ad-justment when the trade was closed.

Orry has since been delivered back to me. Fanny, I learn, was sold by Mr. Pope in Alabama. The price agreed on for Fanny was seven hundred dollars. There was no memoran-dum, note or other writing made as to these facts by us, as we expected to meet in the winter to complete the trade.

Int. 2d. I do not consider that the negroes were sold by me to Mr. Pope, because the trade was not completed. We had made no agreement as to the terms of sale further than stated in the foregoing answer. There was no agreement or understanding as to whether cash was to be paid or credit given, nor as to the length of credit. As I have before stated, all these matters (except the prices of all the negroes, save Orry) were left open, and to be settled when the trade was completed.

To the 3d and 4th, she answers: I have answered these questions fully. (The residue of these answers not read.)

(Signed,)		E. S. POPE.

Sworn to and subscribed before me, this 19th March, 1856.		THOS. R. R. COBB,
Notary Public for Clark Co.

The following are the interrogatories to Mr.s Pope:

ELIZA POPE
	 vs.		} Trover on appeal, in Wilkes Sup. Court.
ROBERT TOOMBS.

Interrogatories on the part of defendant to the plaintiff, Eliza Pope, a material witness for him, residing out of Wilkes County.

Int. 1st. Were you acquainted with Henry J. Pope in his lifetime? If so, state whether the negroes sued for by you in the above stated case ever belonged to you; and how they passed out of your control and possession, into said Pope's.

Int. 2d. Please state if the negroes sued for by you in the

Pope *vs.* Toombs.

above stated case were sold by you to Henry J. Pope; when and what were the terms of the sale.

Int. 3d. If the negroes sued for by you passed out of your control and possession into that of Henry J. Pope, state fully upon what terms.   State the contract between you and H. J. Pope; particularly whether it was a contract of sale or hire, and the terms thereof.

Int. 4th. State all you know that will show that the negroes sued for by you in the above stated case, really and legally belonged to the estate of H. J. Pope, and not to you; state that you have stated all which would show this.

Signed,                        A. H. STEVENS,
                               W. M. REESE,
                               Def'ts Att'ys.

Indorsed on the motion were the following entries :

"I acknowledge due and legal notice of the within motion and grounds of application."

Signed,          THOS. R. R. COBB, Plff's Att'y.
Filed in office March 28th, 1856.

Signed,          JOHN H. DYSON, Cl'k.

"By consent of both parties, by their Counsel, in open Court, upon hearing the within motion, it is ordered that the argument be continued at Warren Court, and the decision thereon be then pronounced, with leave for either party to except and take up the case thence to the Supreme Court. On failure to decide at Warren Court, then farther order to be then made."

"Ordered by consent of both parties, at Warren Court, that this cause be heard at Oglethorpe Court ; in default of which it be heard at the next term of Wilkes Superior Court.

(Signed,)     JAMES THOMAS, J. S. C. W. C.
April 7th, 1856."

The Court over-ruled the motion to dismiss, and plaintiff

excepted.   The motion for a new trial was then heard; and after argument had thereon, the Court made the rule absolute on the first ground taken only.   The defendant insisted on all the grounds.   To this decision plaintiff and defendant both excepted.

The two bills of exceptions were argued together.

T. R. R. COBB, for Mrs. Pope.

BARNETT; TOOMBS, for R. Toombs.

*By the Court.*—BENNING, J. delivering the opinion.

The Court over-ruled the motion to dismiss the motion for a new trial.   Ought the Court to have done so ?   This is the first question.

The answer to this question depends, manifestly, upon this : Was the brief of the evidence a correct brief ?   And the answer to that question depends upon this : Had the brief been approved by the Court, or agreed to by the parties ?

Had the brief been approved by the Court ?   The brief was appended to the motion and was referred to in the motion.   The motion also contained a prayer, that the brief might be approved by the Court.   And the motion, in two of its grounds, had reference to evidence.

Now in entertaining such a motion at all, the Court had to have its attention drawn both to what the evidence was, and to what the brief said it was.   If, therefore, there was any discrepancy between the two, that discrepancy must at once have come to the knowledge of the Court.

But would the Court, with a knowledge of any such discrepancy, have entertained the motion until the error which made the discrepancy had been corrected?   It is not supposable that the Court would.

As, therefore, the Court did entertain the motion, it is to be presumed that there was no discrepancy between what the

Pope *vs.* Toombs.

evidence was, and what the brief's representation of it was.. In other words, the Court's entertaining the motion was an. implied sanction of the brief, the brief being a thing that, made a part of the motion.

The rule of Court does not require that the sanction of a brief of the evidence should be *express*.    (2 *Kelly*, 478.)

If the brief had the sanction of the Court, it needed nothing more; but I will, nevertheless, add a word on the other point, viz : whether the brief was agreed to by the *parties*.

The Counsel for Mrs. Pope, the party defendant in the motion, had notice of the motion and brief simultaneously.    Indeed, the brief made a part of the motion.    He saw from the start that the brief contained what the motion placed itself upon as the evidence.    And if what the brief contained was really not the evidence, a demurrer to the motion on that ground would have been a complete bar to the motion, until the brief was made to contain what was really the evidence. So, too, if the express approval of the Court to the brief was. necessary, a demurrer to the motion on that ground would. have been a bar to the motion, until the brief had received the express approval of the Court.

But the Counsel for Mrs. Pope, instead of demurring to the motion on these grounds, or any others, met the motion. on its merits.    He withheld his objection until the term next after that at which the motion was made—a term at which it was too late, according to an early decision of this Court to obviate the objection by an amendment.

What is the inference ?    That the brief was correct, and. that the Court would have given the brief its express approval, had its attention been called to the subject during the time within which the exercise of the power of approval by the Court would have been proper.

Now will a Court tolerate such an objection, in the face of such an inference ?    Certainly not.    A Court will have to say that such an objection must fall before the rule, declaring that objections for amendable matters must be presented before the time for amendment has past; otherwise, they

shall be considered as waived or as having had their founda-
tions taken away by some implied agreement between the
parties.

[1.] We think, therefore, that the Court was right in re-
fusing to dismiss the motion for a new trial.

The next question is, whether the Court did right in grant-
ing the new trial?

Four grounds were taken in the motion for a new trial:

1st. That certain words in the answer of Mrs. Pope had
been admitted in evidence.

2d. That the verdict was contrary to the evidence.

3d. That the verdict was contrary to the law.

4th. That the verdict was contrary to the charge of the
Court.

The Court said that it placed its judgment, granting the
new trial, on the first of these grounds, and said nothing
about the others.

Does it follow, that because the Court below said nothing
about those other grounds, they are not to be considered by
this Court; and therefore, that the defendant in error is to
lose the benefit, if any, of them?

The answer must be no.

There can be but a single final question for this Court, in
any case; and that is, whether the judgment rendered in
that case by the lower Court was right?

Now any judgment of any Court is right, if it is such that
it gives the party in whose favor it is rendered what the facts
of the case, at the valuation placed on them by the law—not
at the valuation placed on them by the Court rendering the
judgment—say that he is entitled to have.

If, therefore, certain of the facts of the case, at the valua-
tion placed on them by law, say that the party in whose favor
the judgment is rendered ought to have what it gives him, the
judgment is right, even although the same facts, at the valu-
ation placed on them by the Court rendering the judgment,

would say that he ought not to have what the judgment gives him.

It follows, that this Court, in determining the question whether the judgment is right or not, must take into view *all* the facts of the case, and then ask itself whether, at the valuation placed on them by the law, they give the party a right to have that which the judgment adjudges to him.

This Court must, therefore, in this case, take into consideration the grounds of the motion that were passed over in silence by the Court below, as well as the other ground; and the Court must declare that the judgment is right, if it is supported by those grounds, even although it may not be supported by the other ground—the ground by which the Court below said it was supported.

This being so, it was entirely unnecessary for the defendant in error to become a plaintiff in error, in order to get the benefit of the facts which the Court below failed to consider —the facts on which the second, third and fourth grounds of the motion rested. His bill of exceptions was superfluous. He can assert all of his rights in the present one—his adversary's.

Therefore, this Court will have to consider all of the grounds of the motion.

The first of those grounds was the " admitting as evidence before the Jury the words following in the testimony of Eliza Pope, viz : '.The trade was not completed'; such words being the statement of a legal conclusion and not of a fact, the facts themselves being elsewhere stated."

These words made a part of Mrs. Pope's answer to the second interrogatory. That interrogatory was as follows :. " Please state if the negroes sued for by you in the above stated case were sold by you to Henry J. Pope; when and. at what, were they sold ?"

The answer to this interrogatory was as follows : " I do not consider that the negroes were sold by me to Mr. Pope, because the trade was not completed. We had made no arrangement, as to the terms of sale, further than stated in

the foregoing answer.   There was no agreement or under-
standing as to whether cash was to be paid, or credit given,
nor as to the length of credit.   As I have before stated, all
these matters (except the prices of all the negroes, save Or-
ry) were left open, and to be settled when the trade was com-
pleted.''

Now did Mrs. Pope, by the words, " because the trade was
not completed," mean to announce what was the conclusion
to be drawn by the law from the facts of her case, as she had
stated them ; or did she merely mean to give what might
serve, in brief, in the place of a repetition of the facts ; or
what might serve as an introduction to a new statement of
some of the facts ?

[2.] We think she meant only one of the two latter things.
If the answer had been as follows, " I do not consider that
the negroes were sold by me to Mr. Pope, because *of the
facts which I have already mentioned, and which, or some
of which, I am about to mention again, viz. these:* ' We had
made no agreement,' " &c. (in the remaining words of the
answer,) the answer would not, as it appears to us, have been
materially different from what it was. . But if the answer had
been this, it would have contained no words expressive of any
*legal* conclusion.

The meaning of particular words, used in any discourse
whatever, is to be ascertained, if the meaning is dubious, from
the context—from what precedes and from what follows the
words.

Therefore, we differ from the Court below as to this ground.
And we think that it was not a sufficient ground to authorize
the granting of a new trial.

The next ground in the motion was, that the verdict was
contrary to the evidence.

We do not think that it was.

The evidence showed that the price of *Orry* was not agreed
upon.

It showed, too, that the " trade" was a trade for the ne-

groes as a *lot.*   If, therefore, the trade was incomplete as to any one of the lot, it was incomplete as to the lot.

The next ground was, that the verdict was contrary to law.

This was, doubtless, intended to be only a formal ground. We see no foundation for it.

The next and last ground was, that the verdict was contrary to the charge of the Court.

This, too, was probably put in for form's sake.   The charge of the Court is not given ; therefore, we cannot tell whether there was or was not any foundation for the ground.

The conclusion, therefore, is, that none of the grounds were  such as would justify the ordering of a new trial ; and consequently, that the new trial ought not to have been granted.

This disposes of the bill of exceptions of Mrs. Pope.

The cause for Mr. Toomb's bill of exceptions was, the failure of the Court to say what was the estimate it placed on the three last grounds in the motion for a new trial.

There was no· necessity for a bill of exceptions at his in-stance, to give·him the benefit of those grounds.   He was· entitled to assert all the rights which those grounds gave him in the other bill of exceptions, in which he was defend-ant in error.

The rights which those grounds gave him were considered in the determination made of that bill of exceptions.

There is, then, nothing left for consideration in either bill.